UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
ARISTA COFFEE INC. dba FOR FIVE COFFEE,

                Plaintiff,

-against-

CHRISTOPHER CASALE, PARAMOUNT
COFFEE SERVICE OF NEW JERSEY, LLC and
PARAMOUNT REFRESHMENT SOLUTIONS,

                Defendants.
---------------------------------------------------------------

**MEMORANDUM & ORDER**

**18-CV-6237 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Arista Coffee, Inc. ("Arista") brings this action against Christopher Casale, Paramount Coffee Service of New Jersey, LLC ("Paramount NJ") and Paramount Refreshment Solutions, Inc. ("Paramount FLA") (collectively, the "Paramount Vendors"). (Am. Compl. (Dkt. 15).) Casale moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims against him for breach of contract and breach of the duty of loyalty. (*See* Mem. in Supp. of Casale Mot. to Dismiss ("Casale Mem.") (Dkt. 21).) Paramount FLA moves to dismiss all claims against it for lack of personal jurisdiction pursuant to Rule 12(b)(2), and—should the court grant Casale's motion—the Paramount Vendors also seek to dismiss the tortious interference claim asserted against them. (*See* Mem. in Supp. of Paramount Mot. to Dismiss ("Paramount Mem.") (Dkt. 22-7).) For the reasons stated below, the motions to dismiss are DENIED.

## I. BACKGROUND

### A. Facts

The court takes the following statement of facts largely from Plaintiff's amended complaint, the well-pleaded allegations of which the court accepts as true for purposes of the motions to

dismiss. *See N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017).[1]

1. Paramount Vendors Distribute Arista Coffee

Arista is a New York corporation that produces coffee for distribution under the For Five Coffee brand name. (Am. Compl. ¶¶ 14-16.) In March 2016, Arista entered into a distribution agreement with the Paramount Vendors to sell Arista's coffee in the Tri-State area. (*Id.* ¶ 31.) The Paramount Vendors acted as an integrated enterprise in distributing Arista's coffee. (*Id.* ¶ 28.) The Paramount Vendors share three principal owners and managers, a website, clients, and an address in Pompano Beach, FL. (*Id.* ¶¶ 63-67.) Paramount NJ and Paramount FLA each received and paid Arista invoices sent to the Florida address. (*Id.* ¶ 68.) Paramount NJ is a New Jersey LLC. (*Id.* ¶ 21.) The amended complaint alleges that its principal place of business is 192 U.S. Route 46, Fairfield, NJ 07004 (*id.* ¶ 22), but corporate documentation shows its principle place of business as 1141 SW 31st Ave., Pompano Beach, FL 33069. (*See* Paramount NJ Annual Report Certificate (Dkt. 23-3).) Paramount FLA is a Florida corporation, with its principal place of business at the same Florida address. (*Id.* ¶¶ 26-27.) Arista alleges that Paramount FLA operates a New York distribution center through which Paramount FLA services New York customers through Paramount FLA's New York employees. (*Id.* ¶ 30.) Until May 2018, Arista's sales to the Paramount Vendors averaged over $16,000 per week. (*Id.* ¶ 35.) In June 2018, however, the Paramount Vendors reduced their weekly Arista coffee purchases to $10,550. (*Id.* ¶ 5.)

Arista claims that the Paramount Vendors reduced their coffee purchases from Arista by fulfilling customer orders for Arista coffee partially with cheaper coffee from a different producer. (*Id.*

---

[1] When quoting cases, unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

2

¶¶ 39, 111.) Paramount intermingled coffee produced by Copper Moon Coffee, LLC—the packaging for which resembled Arista's packaging—with genuine Arista coffee in client deliveries. (*Id.* ¶¶ 39-41, 44, 111, 148.) Arista alleges that the Paramount Vendors intended to deceive consumers into believing the substitute coffee was Arista's product. (*Id.* ¶ 128.) The intermingled Arista and Copper Moon coffee caused customer confusion as to whether they purchased an Arista product. (*Id.* ¶ 129.) The Paramount Vendors approached Arista's clients claiming that the Paramount Vendors could supply Arista coffee for a reduced price. (*Id.* ¶ 149.)

Arista discovered the alleged scheme in June 2018 after noting reduced orders and consumer reports of its coffee's altered taste. (*Id.* ¶¶ 38, 40.) Arista's investigation revealed that the Paramount Vendors distributed substitute coffee to local coffee shops and offices from Connecticut to Washington, DC. (*Id.* ¶¶ 41-43.) The Paramount Vendors continued to distribute substitute product through February 2019. (*Id.* ¶ 45.) Consequently, Arista alleges lost profits and harm to its goodwill. (*Id.* ¶ 131.)

2.  Chistopher Casale's Employment with Arista

Arista also alleges that the Paramount Vendors induced an Arista salesman, Christopher Casale, to share Arista's confidential and propriety information, summarily quit Arista, and to work with the Paramount Vendors through his newly formed consulting business. (*Id.* ¶¶ 62, 87, 101.)

Casale executed an Employment Contract with Arista in June 2016 as a salesman whose duties included managing Arista's business with the Paramount Vendors. (*Id.* ¶¶ 4, 17-19, 46; *see also* Employment Contract (Dkt. 15-1).) In the course of his employment, Arista provided Casale with proprietary information including: Arista's manufacturing process, inventory management, client lists, and marketing methods. (*Id.* ¶ 50.) Casale's

3

contract provided for a one-year term to be followed by automatic annual extensions if neither party provided written notice of termination. (*Id.* ¶ 75.) The contract provided that either party could terminate the agreement without cause on 30 days' written notice. (*Id.* ¶ 77.) Casale resigned by email on July 1, 2018 without advance notice. (*Id.* ¶ 81.) Neither Arista nor Casale had previously given notice to terminate the agreement. (*Id.* ¶ 76.) In his resignation email, Casale cited inappropriate business practices between Arista and the Paramount Vendors that violated Casale's personal ethical standards. (*Id.* ¶ 55.) Arista alleges that the Paramount Vendors induced Casale to resign from Arista to work directly with the Paramount Vendors. (*Id.* ¶ 101.) Before ultimately resigning on July 1, 2018, Casale refused to participate in Arista's June 2018 investigation into the Paramount Vendors distribution of substitute coffee. (*Id.* ¶¶ 54-55.)

Casale's contract included a three-year noncompete provision, in which Casale agreed to not "own, manage, operate, join control or participate in the ownership, management, operation or control of, or be connected in any manner with any company, institution or entity which is competitive with Arista in an area equal to a radius of 75 miles from Times Square in the County, City and State of New York at the time of the termination of this Agreement and which may, or does, sell to, solicit, or service any customer of Arista." (*Id.* ¶ 78.) Arista's customers were defined as any "who ha[ve] done business with Arista within a time period of (3) year [sic] from the termination for any reason whatsoever of this agreement." (*Id.*)

Casale took steps during his employment to begin to work independently with the Paramount Vendors. (*Id.* ¶ 52.) Casale worked from Paramount NJ's New Jersey office without informing Arista. (*Id.* ¶¶ 53, 92.) Casale provided the Paramount Vendors with Arista's confidential and proprietary information, including Arista's manufacturing process and client lists. (*Id.* ¶

62.) While still employed with Arista, Casale incorporated a company, Cap-One Coffee Consulting, through which Casale subsequently engaged in the business of manufacture and distribution of coffee in direct competition with Arista. (*Id.* ¶¶ 57, 60, 95.) Arista claims that as a result of Casale's disclosure of Arista's proprietary information, Arista suffered lost profits and harm to its goodwill. (*Id.* ¶ 96.) Arista further alleges that Casale continued a business relationship with the Paramount Vendors in violation of his employment agreement's noncompete provision. (*Id.* ¶¶ 61, 82.)

### B. Procedural History

Arista filed its original complaint in state court on September 28, 2018, and the Paramount Venders removed the case to this court on November 2, 2018. (*See* Not. of Removal (Dkt. 1-1).) Arista filed a complaint in this court on December 21, 2018 and amended its complaint on February 28, 2019. (*See* Compl. (Dkt. 12); Am. Compl.) Currently pending before the court is Paramount FLA's motion to dismiss for lack of personal jurisdiction (*see* Paramount Mot. to Dismiss (Dkt. 22); Paramount Mem.; Arista Mem. in Opp. to Paramount Mot. to Dismiss (Dkt. 26); Paramount Reply (Dkt. 23)), and Casale's motion to dismiss for failure to state a claim (*see* Casale Mem.; Mem. in Opp. to Casale Mot. to Dismiss ("Opp. to Casale") (Dkt 25); Casale Reply (Dkt. 24)).

## II. PARAMOUNT FLA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. Legal Standard

"[A] district court has considerable procedural leeway" when "deciding a pretrial motion to dismiss for lack of personal jurisdiction." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). "It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion;

or it may conduct an evidentiary hearing on the merits of the motion." *Id.* Where the court opts not to hold a hearing or order jurisdictional discovery, the plaintiff need only make a prima facie showing of jurisdiction. *Id.* (citing *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). "A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) (summary order); *see also Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) ("A plaintiff may carry this burden by pleading in good faith legally sufficient allegations of jurisdiction.").

"Personal jurisdiction of a federal court over a non-resident defendant is governed by the law of the state in which the court sits—subject, of course, to certain constitutional limitations of due process." *Henderson v. I.N.S.*, 157 F.3d 106, 123 (2d Cir. 1998). Therefore, "a district court must first determine whether there is jurisdiction over the defendant under the relevant forum state's laws." *DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 8 (2d Cir. 2018) (summary order). If the law of the forum state provides jurisdiction, "the court then must decide whether [the] exercise [of jurisdiction] comports with the requisites of due process." *Id.* However, "[i]f jurisdiction is statutorily impermissible," a court "need not reach the question of its constitutionality." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007).

### B. Discussion

To establish that the court has personal jurisdiction over Paramount FLA, Arista has to demonstrate that Paramount FLA was "either present and doing business within the meaning of New York Civil Practice Law and Rules ("CPLR") § 301," *i.e.*, that Paramount FLA is subject to general personal jurisdiction, or that Paramount FLA "committed acts within the scope of New York's long-arm statute, CPLR § 302," *i.e.*, that Paramount FLA is subject

to specific personal jurisdiction. *DeLorenzo*, 757 F. App'x at 8. Each is addressed in turn.

### 1. General Personal Jurisdiction

An entity "is subject to general jurisdiction in New York pursuant to . . . CPLR § 301," if the "company has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014). In *Daimler AG v. Bauman*, 571 U.S. 117 (2014), however, the Supreme Court held that a state may only exercise general jurisdiction over a corporation where "that corporation's affiliations with the [s]tate are so continuous and systematic as to render it essentially at home in the forum [s]tate." *Id.* at 139. *Daimler* made clear that, except for an exceptional case, "a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." *DeLorenzo*, 757 F. App'x at 8 (citing *Daimler*, 571 U.S. at 139 & n.19); *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016).

Paramount FLA is incorporated and has its principle place of business in Florida. (*See* Paramount FLA Incorporation Certification (Dkt. 22-5); Aff. of Albert Miniaci ("Miniaci Aff.") (Dkt. 22-4) ¶ 28; Am. Compl. ¶ 27).) The allegations in the complaint do not describe an exceptional case that would merit an exception to the *Daimler* rule. Therefore, the court does not have general personal jurisdiction over Paramount FLA.

### 2. Specific Personal Jurisdiction

Specific personal jurisdiction is governed by New York's long-arm statute, CPLR § 302(a), which confers personal jurisdiction over a non-domiciliary for certain acts by the non-domiciliary. CPLR § 302(a)(1) confers personal jurisdiction over any non-domiciliary

to specific personal jurisdiction. *DeLorenzo*, 757 F. App'x at 8. Each is addressed in turn.

1. General Personal Jurisdiction

An entity "is subject to general jurisdiction in New York pursuant to . . . CPLR § 301," if the "company has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014). In *Daimler AG v. Bauman*, 571 U.S. 117 (2014), however, the Supreme Court held that a state may only exercise general jurisdiction over a corporation where "that corporation's affiliations with the [s]tate are so continuous and systematic as to render it essentially at home in the forum [s]tate." *Id.* at 139. *Daimler* made clear that, except for an exceptional case, "a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." *DeLorenzo*, 757 F. App'x at 8 (citing *Daimler*, 571 U.S. at 139 & n.19); *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016).

Paramount FLA is incorporated and has its principle place of business in Florida. (*See* Paramount FLA Incorporation Certification (Dkt. 22-5); Aff. of Albert Miniaci ("Miniaci Aff.") (Dkt. 22-4) ¶ 28; Am. Compl. ¶ 27).) The allegations in the complaint do not describe an exceptional case that would merit an exception to the *Daimler* rule. Therefore, the court does not have general personal jurisdiction over Paramount FLA.

2. Specific Personal Jurisdiction

Specific personal jurisdiction is governed by New York's long-arm statute, CPLR § 302(a), which confers personal jurisdiction over a non-domiciliary for certain acts by the non-domiciliary. CPLR § 302(a)(1) confers personal jurisdiction over any non-domiciliary

who "transacts any business within the state or contracts anywhere to supply goods or services in the state." "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Eyeking, LLC v. JSS, LLC*, 321 F. Supp. 3d 326, 331 (E.D.N.Y. 2018) (quoting *Sole Resorts, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)). "A suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.'" *Id.* (quoting *Best Van Lines, Inc*, 490 F.3d at 246).

The primary grounds for Paramount FLA's Rule 12(b)(2) motion is that Paramount FLRA asserts it has no contacts whatsoever in New York and has conducted no business in New York. (*See* Paramount Mem. at 4-6, 10-12; Paramount Reply at 7-9.) However, Plaintiff alleges that Paramount NJ is a shell of Paramount FLA and the two entities "operate together as an integrated enterprise." (Am. Compl. ¶ 28.) Therefore, the court must conduct a veil-piercing analysis to determine whether Paramount NJ is the "alter ego" of Paramount FLA such that the court may exercise personal jurisdiction over Paramount FLA.

In New York, "[t]he standard for piercing the corporate veil for purposes of personal jurisdiction [is] . . . less stringent" than that for the purposes of establishing liability.[2] *USHA Holdings, LLC v.*

---

[2] "Generally in a diversity case, the court applies the choice of law rules of the forum state to determine what law governs alter ego or piercing the corporate veil analysis." *Miramax Film Corp. v. Abraham*, No. 01-CV-5202 (GBD), 2003 WL 22832384, at *6 (S.D.N.Y. Nov. 25, 2003). However, this analysis is "unwarranted" where, as here, "[t]he briefs submitted by plaintiff and the movants rely exclusively on New York law." *Id.*; *see also Alterseekers, Inc. v. BrandForce SF, LLC*, No. 12-CV-5392 (GRB), 2015 WL

*Franchise India Holdings Ltd.*, 11 F. Supp. 3d 244, 266 (E.D.N.Y. 2014). Plaintiff may prevail if the "factual allegations in [its] complaint," along with affidavits and supporting documents "constituted a specific averment of facts that, if credited, would suffice to show that [the Paramount Vendors] operate as a single economic unit and that [Paramount FLA] dominates and controls" Paramount NJ. *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010). The analysis "examine[s] factors such as the failure to observe corporate formalities, inadequate capitalization, intermingling of personal and corporate funds, shared office space and phone numbers, or an overlap of ownership, directors, officers, and personnel." *USHA Holdings*, 11 F. Supp. 3d at 266. "These factors are not exhaustive, nor is proof of any one factor or a combination of factors necessarily determinative. Rather, a finding that a corporation is an alter ego of another entity is warranted when doing so will achieve an equitable result." *In re Platinum & Palladium Antitrust Litig.*, No. 14-CV-9391 (GHW), 2017 WL 1169626, at *48 (S.D.N.Y. Mar. 28, 2017).

The amended complaint alleges that Paramount FLA and Paramount NJ "operate together as an integrated enterprise, with interrelated operations and centralized control of labor relations." (Am. Compl. ¶ 28.) Paramount FLA "transacts substantial business in New York, employs numerous employees in New York, and supplies products to multiple New York enterprises." (*Id.* ¶ 30.) Plaintiff "did business with both Paramount Defendants communicating via the same personnel." (*Id.* ¶ 32.) Additionally, the amended complaint alleges that the Paramount

---

5719759, at *5 (E.D.N.Y. Sept. 29, 2015). "Since the subject parties assume New York law controls this issue, 'implied consent . . . is sufficient to establish choice of law.'" *Miramax*, 2003 WL 22832384, at *6 (quoting *Krumme v. Westpoint Stevens, Inc.,* 238 F.3d 133, 138 (2d Cir. 2000)).

9

Vendors "are owned, managed, and operated by the same core team of individuals, including Albert Miniaci (owner), Deana McDowell (Vice President of Business Development) and Scott Guardino ([P]resident and [G]eneral [M]anager)." (*Id.* ¶ 66.) Paramount NJ and Paramount FLA also have the same principle place of business. (*See* Paramount NJ Annual Report Certificate; Paramount FLA Annual Report (Dkt. 1-5).)

Additionally, Plaintiff has produced as evidence (1) a chain of emails concerning pricing and lead time for a New York client that included both Scott Guardino and Albert Miniaci (*see* Aug. 15, 2018 Email Thread (Dkt. 28-2)); (2) an email from Kathy Sheppard, including a "Paramount Refreshment" (Paramount FLA) signature block, asking Plaintiff to execute a "Bloomberg 2017" agreement that Miniaci would then sign (Nov. 14, 2016 Kathy Sheppard Email (Dkt. 28-5)); and (3) a series of invoices showing that orders for both Paramount FLA and Paramount NJ were billed to the same Florida Address (*see* Paramount NJ Invoices (Dkt. 15-2); Paramount FLA Invoices (Dkt. 15-3)). Finally, corporate documentation for Paramount NJ shows Paramount FLA as its sole managing member. (*See* Paramount NJ Annual Report Certificate.)

Taken together, Plaintiff has "made sufficiently supported allegations that, if proven true, would establish that [Paramount NJ] and [its] parent, [Paramount FLA], are alter egos." *S. New England Tel. Co.*, 624 F.3d at 138. The allegations against the Paramount Vendors therefore satisfy the requirements to exercise personal jurisdiction under CPLR § 302(a)(1). Since it is "well established that the exercise of personal jurisdiction over an alter ego corporation does not offend due process," *S. New England Tel. Co.*, 624 F.3d at 138, the court may exercise specific personal jurisdiction over Paramount FLA and DENIES its motion to dismiss for lack of personal jurisdiction.

### III. CASALE'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

#### A. Legal Standard

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a complaint. *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (per curiam). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In evaluating a motion to dismiss, a court may consider documents central to a plaintiff's claim, documents sufficiently referred to so as to be deemed "integral" to the complaint, and documents over which a court may take judicial notice. *See King v. City of New York*, No. 12-CV-2344 (NGG), 2014 WL 4954621, at *7-8 (E.D.N.Y. Sept. 30, 2014) (citing *Global Network Comms., Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006)); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (holding that courts may consider an extrinsic document when the complaint "relies heavily upon its terms and effect"). The purpose of this rule is to "prevent[] plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." *King*, 2014 WL 4954621, at *8 (quoting *Global Network*, 458 F.3d at 157).

#### B. Discussion

##### 1. Breach of Contract

To state a claim for breach of contract under New York law, "a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3)

11

breach of contract by the defendant, and (4) damages." *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 158 (E.D.N.Y. 2010) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 177 (2d Cir. 2004)).

The amended complaint includes sufficient factual allegations, taken as true, to state a claim for breach of contract against Casale. First, neither party contests the existence of an employment contract between Arista and Casale, which was attached to the amended complaint. (*See* Employment Contract.) Second, the amended complaint alleges, and Casale does not contest, that "Arista fully performed its obligations pursuant to the agreement it had with Casale by employing Casale and paying him in full for his services." (Am. Compl. ¶ 79.)

Next, the amended complaint identifies two purported breaches by Casale. First, the amended complaint alleges that Casale breached the contract by "resign[ing] from his position . . . without giving Arista the agreed-upon 30 day notice of his resignation." (*Id.* ¶ 81.) Second, it alleges that Casale breached the non-compete and non-solicitation clauses of the contract by starting his own business that competed with Arista and working directly with the Paramount Vendors. (*Id.* ¶ 82.)

Focusing on the second alleged breach,[3] by signing the Employment Contract, Casale agreed that for three years after ending his employment with Arista he would not, without Arista's consent, "directly or indirectly own, manage, operate, . . . or be connected in any manner with any company, institution, or entity which is competitive with Arista in an area equal to a radius of 75 miles

---

[3] Because the court finds that Arista stated a breach of contract claim based on the second alleged breach of the Employment Contract, it need not consider whether Arista also stated a claim based on the first alleged breach.

from Times Square."[4] (Employment Contract at 1.) The noncompete clause further provided that "all customers or clients of Arista, at the time of the termination of this agreement, for any reason whatsoever, shall be, and shall remain, clients and customers of" Arista. (*Id.* at 2.)

The amended complaint alleges that within a month of resigning, Casale "established his own company . . . [that] was engaged in the same business as Arista, namely the wholesale manufacturing, selling and distribution of coffee."[5] (Am. Compl. ¶ 57.) Through his newly formed company, Casale "continued to associate and conduct business relationships with Paramount," including emailing "prospective vendors, copying Paramount representatives." (*Id.* ¶ 61.) At the motion to dismiss stage, these factual allegations are sufficient to state a claim that Casale breached his employment contract with Arista.

Finally, Arista alleges that "[a]s a result of Casale's various breaches of the parties' employment contract, Arista has suffered damages in an amount not yet determined or ascertainable." (*Id.* ¶ 83.) While speculative, this allegation is sufficient for Arista to state a breach of contract claim. *See Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) (holding that a general allegation of damages does not

---

[4] Casale "vigorously denies" that the non-compete clause is enforceable, but chooses not to contest its enforceability as part of his motion. (Casale Mot. at 2 n.1.)

[5] The parties agree that Casale's company was headquartered in Manahawkin, NJ. (*See* Casale Reply at 3; Opp. to Casale at 15-16). The court takes judicial notice of the fact that, according to Google Maps, the center of Manahawkin is fewer than 75 miles from Times Square. *See Disabled in Action v. City of New York*, --- F. Supp. 3d ---, 2020 WL 550612, at *3 n.6 (S.D.N.Y. Feb. 4, 2020); *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 265 n.10 (S.D.N.Y. 2014). Additionally, Arista appended to the amended complaint an email from Casale that supports the inference that Casale's new company competed with Arista in New York City. (*See* Casale Sept. 25, 2018 Email (Dkt. 15-6).)

merit dismissal because New York law allows a plaintiff to recover at least nominal damages for breach of contract claims).

Therefore, the amended complaint has sufficient factual allegations to state a claim for breach of contract against Casale.

### 2. Breach of Duty of Loyalty

"An agent is obligated to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." *Carco Grp., Inc. v. Maconachy*, 383 F. App'x 73, 76 (2d Cir. 2010) (summary order). "When an employee uses an employer's proprietary or confidential information when establishing a competing business, the employee breaches his or her fiduciary duty to the employer." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 521 (S.D.N.Y. 2011).

Here, the complaint alleges, *inter alia*, (1) Casale resigned in order "to open up his own company, in competition with Arista, and deal directly with Paramount, using Arista's confidential and proprietary information" (Am. Compl. ¶ 56); (2) Casale started his own company using "Arista's successful business model and structure, product information, distributor contact information[,] and client contact information" (*id.* ¶ 58); (3) Casale's company "was incorporated while Casale was still employed by Arista" (*id.* ¶ 60); and (4) Casale "provided Paramount with confidential and proprietary information he acquired during his employment with Arista, including . . . equipment manufacturers used to brew coffee, recipes, and client lists" (*id.* ¶ 62). These allegations are sufficient to state a claim that Casale breached his duty of loyalty to Arista.

Casale argues that the duty of loyalty claim should be dismissed as duplicative of the breach of contract claim. (*See* Casale Mem. at 10 (citing *Uni-World Capital, L.P. v. Preferred Fragrance, Inc.*,

43 F. Supp. 3d 236, 244 (S.D.N.Y. 2014) ("A breach of fiduciary duty claim is duplicative when it is based on allegations of fiduciary wrongdoing that are expressly raised in plaintiff's breach of contract claim.").) However, Casale's duty to not use Arista's proprietary and confidential information for his own benefit was separate and distinct from the alleged breaches of his employment contract with Arista. *See Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, 328 F. Supp. 3d 141, 157 (S.D.N.Y. 2018) (where the "duty of loyalty is independent of the" employment contract, the duty of loyalty claim is "not subject to dismissal as duplicative"); *Nostrum Pharm., LLC v. Dixit*, No. 13-CV-8718 (CM), 2016 WL 5806781, at *19 (S.D.N.Y. Sept. 23, 2016) ("[The] duty of loyalty is independent of any duty created by the . . . Employment Contract and is not duplicative of Plaintiffs' breach of contract claim."). Arista's duty of loyalty claim is therefore not duplicative of its breach of contract claim.

Because the amended complaint includes sufficient factual allegations, taken as true, to state claims for breach of contract and breach of the duty of loyalty, Casale's motion to dismiss is DENIED.

## IV. PARAMOUNT VENDORS' MOTION TO DISMISS ARISTA'S TORTIOUS INTERFERENCE CLAIM

Finally, the Paramount Vendors assert that Arista's claim for tortious interference must be dismissed if the court dismisses the claims against Casale. (Paramount Mem. at 14.) Because the court denies Casale's motion to dismiss, the Paramount Vendors' motion to dismiss the tortious interference claim is also DENIED.

## V. CONCLUSION

For the reasons stated above Casale's (Dkt. 21) motion to dismiss for failure to state a claim and Paramount FLA's (Dkt. 22) motion

15

to dismiss for lack of personal jurisdiction are DENIED. The Paramount Vendors' motion to dismiss Arista's tortious interference claim is also DENIED

SO ORDERED.

Dated:   Brooklyn, New York
         April 16, 2020

                                        /s/ Nicholas G. Garaufis
                                        NICHOLAS G. GARAUFIS
                                        United States District Judge